UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 3:02CR250(AWT) |
| | : | |
| FREDERICK KING | : | March 3, 2008 |

**GOVERNMENT'S NOTICE REGARDING MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)**

On August 18, 2003, the defendant, Frederick King, was sentenced to 84 months of incarceration. The defendant is due to be released from incarceration on October 22, 2008. Although the defendant has not yet sought relief based upon the changes to the crack cocaine guidelines which were passed by the Sentencing Commission on November 1, 2007, he does appear to qualify for a reduction. For the reasons stated herein, the Government respectfully submits that, on March 3, 2008, the date when the November 1, 2007 amendment becomes retroactive, the Court should issue an amended judgment and impose a reduced sentence of 67 months (time served), which accounts for the two-level reduction in the crack cocaine guidelines, and which will result in the defendant's release from incarceration. The Court can issue an amended judgment in advance of March 3, 2008, provided that the judgment makes clear the fact that the modified sentence does not take effect until on or after March 3, 2008.

I.  **BACKGROUND**

In late 2001, the New Haven Drug/Gang Task Force commenced an investigation targeting the drug trafficking activity of Richard Mack and his associates. Intelligence information gathered by the Task Force indicated that Mack controlled a large-scale crack trafficking operation which was based in the Quinnipiac Terrace Housing complex in New Haven, Connecticut. Mack was suspected

to be selling street level distribution and ounce quantities of crack cocaine and had an extensive customer base.

Based on information derived from confidential informants and other sources of intelligence, the Task Force obtained pen register coverage on a number of telephones utilized by Mack and others engaged in his drug trafficking activity. In addition, extensive analysis of toll records pertaining to telephones used by Mack and/or his associates was conducted. The analysis of this information allowed the Task Force to identify particular telephones which were being used to further Mack's drug trafficking activity.

Based on the information amassed by the Task Force, authorization was sought and obtained to intercept conversations occurring over one telephone used by Richard Mack and two telephones used by his co-conspirator, Moses Bryant. The intercepts and related investigation resulted in the wiretapping of additional telephones, including telephones utilized by members of other crack trafficking operations in the New Haven area and telephones used by the source organization located in New York. In total, from May of 2002 through September of 2002, eight telephones were the subject of electronic surveillance. The electronic surveillance, in conjunction with evidence derived from other law enforcement techniques, established the following:

Richard Mack's crack operation had a source of supply based in New York City. This source was eventually identified as Jamil Sari, aka "Pachuco." Further investigation, including but not limited to the intercepted conversa-tions, established that the same source of supply, Jamil Sari, was also responsible for providing crack cocaine to two other crack distribution operations in Connecticut, one located in the Hill section of New Haven, and the other based in the towns of Ansonia and Derby. The Hill operation was managed and supervised by Albert Reed, Sr. and the

Ansonia/Derby operation was headed by John Sanders.

Intercepted conversations, physical and videotaped surveillances, seizures and cooperating witnesses establish that the Mack operation was obtaining approximately one kilogram of crack cocaine on a weekly basis; that the Reed operation was obtaining approximately one-half kilogram of crack cocaine on a weekly basis; and, the Sanders operation was obtaining between 125 to 250 grams of crack cocaine on a weekly basis. The evidence further establishes that the relationship between Sari's supply organization and the three identified, Connecticut-based distribution operations existed throughout the pendency of the charged conspiracies and, in fact, had been in existence well before the time period charged in the three conspiracies.

The initial wiretaps and related investigative efforts pertained to Mack and his operation. As noted Mack's source of supply was identified, as were the source's coconspirators. In the course of monitoring the Mack phones, the source, Jamil Sari, was arrested on unrelated outstanding charges in New York State. Following Sari's arrest, intercepted calls established that he continued to supervise his crack supply operation from prison. While Sari was incarcerated he relied on three individuals from New York to maintain and carry on his illicit drug trafficking business. The three persons were: Jamil Sari's brother, Fareed Sari, who was also known as "Nickels;" Jamil Sari's girlfriend, Joselina Alcedo-Felix; and a trusted member of Sari's New York operation, Rosa Taverns. The intercepted conversations established that Jamil Sari remained in telephonic contact with these individuals and they were responsible for obtaining the crack cocaine, arranging for its sale to Mack, Reed, Sanders and others, delivering the crack cocaine and collecting the drug proceeds from the various purchasers. In addition to the wiretap evidence, physical surveillance, originally of Jamil Sari, and subsequently of Joselina Salcedes-Felix and Rosa Taveras confirmed that they were

responsible for and did deliver crack cocaine to Mack and Reed on numerous occasions during the pendency of the instant investigation. Salcedes-Felix and Taveras were captured on videotape on a number of occasions, arriving in New Haven, proceeding to meet with Mack and then returning to New York with the money paid for the crack they delivered. The intercepted calls would involve discussions of the quantity Mack, Reed or Sanders desired, the cost of the crack cocaine, the time and date when the crack would be delivered, conversations informing one another of their respective whereabouts, and calls confirming that the transaction had been consummated.

Seizures made during the course of the investigation, as well as searches conducted subsequent to the arrests of a number of defendants, resulted in the collection of significant quantities of crack cocaine from various coconspirators, nearly all of which was supplied by the Sari organization. For instance, following the delivery of crack cocaine by Rosa Taveras, on behalf of the jailed Jamil Sari, to Richard Mack, on July 14, 2002, a state search warrant was obtained and executed on that same day. The search resulted in the seizure of approximateley 1300 grams of crack cocaine from Mack's stash location. Following the arrest of Rosa Taveras, a vehicle, registered to Taveras, and used by Sari to store some of the cash derived from his distribution activity, was searched. Approximately $350,000 belonging to Jamil Sari was seized from a hidden compartment inside the vehicle. Additional cash seizures in the course of the investigation include $8,900.00 from Mack; $7,000.00 from Sanders; and $13,000.00 from Fareed Sari. Moreover, three vehicles utilized by the Sari organization were seized and all had secret compartments or traps built into them which would allow for the secreting of large quantities of crack cocaine, United States currency, and firearms.

As noted, the investigation established that Richard Mack was the leader of a crack operation

in New Haven. Mack would arrange with his sources for the delivery of $30,000 worth of crack cocaine approximately each week. Mack would take delivery of the crack cocaine, pay for the crack cocaine, stash the drugs and then sell to customers or supply various quantities to persons working for him. The investigation established that Reed and Sanders engaged in similar conduct. However, although substantial, their respective operations were not as prolific as Mack's distribution network.

The source organization, responsible for providing Mack, Reed and Sanders with supplies of crack, was based in New York City. As mentioned, initially, Jamil Sari, prior to his arrest, was the leader of this operation. Following his arrest, Jamil Sari continued to play a prominent role by communicating with his co-conspirators and instructing them on how to continue his drug business in his absence. In order to achieve Jamil Sari's goals, Fareed Sari began to organize and supervise the drug trafficking activity and Joselina Salcedo-Felix and Rosa Taveras began to travel back and forth from New York to Connecticut on a more frequent basis. Their travels to Connecticut were observed on a number of occasions by agents conducting physical and captured on video-taped surveillance as well. The bulk of the money made from the sale of crack cocaine was set aside for Jamil Sari and only Fareed Sari, Rosa Taveras and Joselina-Salcedo Felix had access to any of the "stash" locations.

In regard to the Mack organization, the intercepted conversations, physical surveillance, seizures and other investigative techniques established the following:

Mack would obtain approximately $30,000 of crack cocaine on a regular basis, approximately once a week from the Sari organization. Mack would, in turn, rely upon Moses Bryant to be responsible to the needs of the New Haven customers.

In April and May of 2002, a cooperating witness was able to purchase crack cocaine from

Moses Bryant on three separate occasions. The electronic surveillance which followed, established Bryant's continuous and significant role in Mack's crack trafficking activity.

The defendant had a narcotics relationship with Richard Mack which predated the charged conspiracy by a significant period. Mack would supply King with multiple one-eighth ounce quantities of crack on a weekly or biweekly basis, and King would redistribute the cocaine he had obtained from Mack. As Moses Bryant assumed a more prominent role in the conspiracy as the primary distributor of cocaine base for Mack in mid-2002, King began to obtain cocaine base from Bryant, and this is reflected in calls intercepted over Bryant's cellular telephone. King's narcotics distribution activity with the Mack organization slowed as the summer of 2002 progressed, but King remained an active purchaser and distributor until his arrest.

On September 6, 2002, a federal grand jury sitting in Hartford returned a seven-count indictment charging 20 individuals with crack conspiracy and related offenses. The defendant was charged in Count One of the indictment with conspiracy to distribute 50 grams or more of crack in violation of U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.

The defendant changed his plea to guilty as to this charge on December 2, 2002 and, in doing so, entered into a written plea agreement.

The Pre-Sentence Report ("PSR") calculated the defendant's base offense level as 36, with a three-level reduction for acceptance of responsibility. At Criminal History Category V, this resulted in a Guideline range of 210-262 months.

On August 18, 2003, this Court imposed a term of incarceration of 84 months. In doing so, the Court adopted the Guideline calculation of the PSR. Upon motion filed by the Government, the Court afforded the defendant a downward departure, and imposed a sentence of 84 months.

## II.   DISCUSSION

On November 1, 2007, the Sentencing Commission amended the cocaine base guidelines provided for under U.S.S.G. § 2D1.1(c). The amendment in question is Amendment 706, effective November 1, 2007, which reduced the base offense level for most crack cocaine offenses.[1] In Amendment 706, the Commission generally reduced by two levels the offense levels applicable to crack cocaine offenses. The Commission reasoned that, putting aside its stated criticism of the 100:1 ratio applied by Congress to powder cocaine and crack cocaine offenses in setting statutory mandatory minimum penalties, the Commission could respect those mandatory penalties while still reducing the offense levels for crack offenses. See U.S.S.G., Supplement to App. C, Amend. 706. Previously, the Commission had set the crack offense levels in Section 2D1.1 above the range which included the mandatory minimum sentence. Under the amendment, the Commission has set the offense levels so that the resulting guideline range includes the mandatory minimum penalty triggered by that amount, and then set corresponding offense levels for quantities which fall below, between, or above quantities which trigger statutory mandatory minimum penalties. For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment. See 21 U.S.C. § 841(b)(1)(B). Therefore, the revised guideline applies an offense level of 24 to a quantity of cocaine base ("crack") of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The final result of the amendment is a reduction of two levels for each of the ranges set in

---

[1] Amendment 706 was further amended in the technical and conforming amendments set forth in Amendment 711, also effective November 1, 2007.

the guidelines for crack offenses. At the high end, the guideline previously applied offense level 38 to any quantity of crack of 1.5 kilograms or more. That offense level now applies to a quantity of 4.5 kilograms or more; a quantity of at least 1.5 kilograms but less than 4.5 kilograms falls in offense level 36. At the low end, the guideline previously assigned level 12 to a quantity of less than 250 milligrams. That offense level now applies to a quantity of less than 500 milligrams.

In this case, the two-level reduction results in an adjusted offense level of 31 and a guideline incarceration range of 168-210 months. At sentencing, the Court imposed a term of incarceration of 84 months, which was triggered by the Government's motion, and amounted to a 126 month reduction (60%) below the bottom of the guideline range applicable at the time. It would appear that, applying the November 1, 2007 amendment, the new guideline range is 168-210 months.

In authorizing a reduced sentence based on a retroactive amendment to a guideline, the Sentencing Commission stated: "If the original term of imprisonment was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under subdivision (1) may be appropriate. . . ." U.S.S.G. § 1B1.10(b)(2)(B) app. note 3. The application note provides an instructive example:

> For example, in a case in which: (1) the guideline range applicable to the defendant at the time of sentencing was 70 to 87 months; (2) the defendant's original term of imprisonment imposed was 56 months (representing a downward departure of 20 percent below the minimum term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing); and (3) the amended guideline range determined under subsection (b)(1) is 57 to 71 months, a reduction to a term of imprisonment of 46 months (representing a reduction of approximately 20 percent below the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1)) would amount to a comparable reduction and may be appropriate.

§ 1B1.10 app. note 3.

Here, the bottom of the original guideline range was 210 months, and the Court imposed a sentence of 84 months. Thus, the reduction authorized by the Sentencing Commission is 60% below the new guideline minimum of 168 months, which is a term of 67 months.

On December 11, 2007, the Commission added Amendment 706 to the list of amendments stated in Section 1B1.10(c) which may be applied retroactively, effective March 3, 2008. Accordingly, this Court is without authority to reduce a sentence prior to that date. Congress has delegated to the Sentencing Commission the sole authority to permit the retroactive application of a guideline reduction, and no court may alter an otherwise final sentence on the basis of such a retroactive guideline unless the Sentencing Commission expressly permits it. See, e.g., United States v. Perez, 129 F.3d 255, 259 (2d Cir. 1997); United States v. Thompson, 70 F.3d 279, 281 (3d Cir. 1995); United States v. McHan, 386 F.3d 620, 622 (4th Cir. 2004); United States v. Drath, 89 F.3d 216, 218 (5th Cir. 1996); United States v. Dullen, 15 F.3d 68, 70-71 (6th Cir. 1994); Ebbole v. United States, 8 F.3d 530, 539 (7th Cir. 1993); United States v. Wyatt, 115 F.3d 606, 608-09 (8th Cir. 1997); United States v. Cueto, 9 F.3d 1438, 1441 (9th Cir. 1993); United States v. Avila, 997 F.2d 767, 768 (10th Cir. 1993); United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003); see also Pierre Louie v. United States, 2008 WL 114468 at *7 (D. Me. Jan. 1, 2008) (amendment 706 becomes retroactive on March 3, 2008 "meaning, that as of that date, impacted defendants serving eligible sentences may be able to move for a sentence reduction pursuant to 18 U.S.C. § 3582(c)"). Indeed, the United States District Court for the Southern District of Illinois has stayed all Section 3582(c) motions based on Amendment 706 until March 3, 2008. See United States v. Wommack,

2008 WL 78782 at *1 (S.D. Ill. Jan. 7, 2008).[2]

> Section 3582(c)(2) provides:
>
> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id. The Court may act on this motion without the defendant's presence. U.S.S.G. § 1B1.10(a)(3) clearly states that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." In addition, Fed. R. Crim. P. 43(b)(4) explicitly provides that a defendant "need not be present" when the proceeding involves a reduction of sentence under 18 U.S.C. § 3582(c). Likewise, given the rules and considering the burdens imposed on producing prisoners incarcerated within the Bureau of Prisons, the federal courts of appeal to address this issue have uniformly held that a defendant has no constitutional or statutory right to be present in connection with a motion filed under Section 3582(c). See, e.g., Anderson v. United States, 241 Fed. Appx. 625, 629 (11th Cir. July 18, 2007) (unpublished) ("Under Federal Rule of Criminal Procedure 43(b)(4), a defendant's presence at a § 3582(c) sentence correction proceeding is not required") (emphasis in original); United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (same; hearing not required); United States v. Tidwell, 178 F.3d 946, 948-949 (7th Cir. 1999) (same,

---

[2]The Sentencing Commission imposed the delay in light of the enormous burdens that retroactive application of the crack cocaine amendments, in tens of thousands of cases, will impose on the courts, prison officials, probation officers, prosecutors, and others. The delayed implementation of retroactivity permits all officials to assure the orderly handling of these many cases and prisoners. Delayed implementation also allows for Congressional review of the Commission's decision and Congress may choose to reject or alter the Commission's decision.

noting that "a proceeding under 18 U.S.C. § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution").

Although the defendant may qualify for a reduction in sentence under Section 3582(c)(2) and the applicable policy statements of the Commission, a reduction of sentence is not automatic. This Court's discretion is set forth in Section 3582(c)(2) itself, which provides: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Thus, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. United States v. Vautier, 144 F.3d 756, 760 (11th Cir. 1998);[3] see also United States v. Colon, 961 F.2d 41, 46 (2d Cir. 1992)(stating that district court, in the first instance, had to determine to what extent, if any, it has authority to apply retroactive amendment and whether it wishes to exercise its discretion to do so).

Similarly, section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." Id. app. note 1(B)(I); see also U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle

---

[3] In Vautier, the Eleventh Circuit held that the district court did not abuse its discretion in denying a Section 3582(c)(2) motion for reduction of sentence, upon considering the 3553(a) factors. The district court denied the motion, stating that "in light of this Court's expressed concern of the defendant's demonstrated violence and factoring all of the other considerations that went into the establishment of this defendant's sentence, the same sentence would have been imposed under the current amended guidelines." Vautier, 144 F.3d at 759.

11

a defendant to a reduced term of imprisonment as a matter of right."). All courts are in accord on this point. See United States v. Whitebird, 55 F.3d 1007, 1010 (5th Cir. 1995) (district court permissibly declined to reduce sentence); United States v. Ursery, 109 F.3d 1129, 1137 (6th Cir. 1997); United States v. Coohey, 11 F.3d 97, 101 (8th Cir. 1993); United States v. Wales, 977 F.2d 1323, 1327-28 (9th Cir. 1992); United States v. Mueller, 27 F.3d 494, 497 n.5 (10th Cir. 1994).

"Thus, reading § 3582(c)(2) and the Sentencing Guidelines together, the district court must make two distinct determinations before deciding whether to reduce a defendant's sentence under § 3582(c)(2)." Vautier, 144 F.3d at 760. First, Section 1B1.10(b) directs:

> In determining whether, and to what extent, a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced . . . .

Id. In other words, "the court must substitute the amended guideline range for the originally applied guideline range and determine what sentence it would have imposed. In undertaking this first step, only the amended guideline range is changed. All other guideline application decisions made during the original sentencing remain intact." Vautier, 144 F.3d at 760.

Then, in the second step, "in light of the conclusion reached in the first step, the court must consider the factors listed in § 3553(a) and determine whether or not to reduce the defendant's original sentence." Id.[4] Subject to the limits set forth in Section 1B1.10(b), the Court may consider

---

[4] The Eighth Circuit has also endorsed and explained at length this two-step procedure. United States v. Hasan, 245 F.3d 682, 684-85 (8th Cir. 2001) (en banc), citing United States v. Wyatt, 115 F.3d 606 (8th Cir. 1997). In United States v. Legree, 205 F.3d 724, 728 (4th Cir. 2000), however, the court stated that it disagreed with the need for or utility of the two-step method. The essence of its ruling was that the district court's proper consideration of the factors relevant to a Section 3582(c)(2) reduction of sentence, including consideration of the Section 3553(a) factors, may be presumed from the record. The court did not criticize the underlying

all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. Revised application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Revised application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

If this Court decides to reduce a defendant's sentence, the extent of the reduction is strictly limited. Congress delegated to the Sentencing Commission the authority to determine to what extent a sentence may be reduced. See 18 U.S.C. § 3582(c)(2); 28 U.S.C. § 994(u). The Commission, in turn, directed in Section 1B1.10(b) that, with one exception (where the defendant earlier received a below-guideline sentence), "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2)(A). An application note adds: "Under subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which the court may reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and

---

proposition that a trial court in fact should consider the guideline range as affected only by the guideline amendment, and should then apply the Section 3553(a) factors in determining whether to reduce the sentence. See id.

this policy statement. Specifically, if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the time of sentencing, the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1)." U.S.S.G. § 1B1.10 app. note 3.[5] Thus, the Court may not reduce the sentence below the range provided by the amended guideline, and "in no case . . . shall the term of imprisonment be reduced below time served." U.S.S.G. § 1B1.10 app. note 3.

---

[5] Application note 3 provides an example of this rule:

> For example, in a case in which: (1) the guideline range applicable to the defendant at the time of sentencing was 41 to 51 months; (2) the original term of imprisonment imposed was 41 months; and (3) the amended guideline range determined under subsection (b)(1) is 30 to 37 months, the court shall not reduce the defendant's term of imprisonment to a term less than 30 months.

## III. CONCLUSION

It is respectfully requested that the Court defer acting on the defendant's motion until March 3, 2008. At that time, assuming that the Sentencing Commission's decision as to the retroactivity of the November 1, 2007 amendment to the crack cocaine guidelines stands, the Government submits that, pursuant to 18 U.S.C. § 3582(c), the Court should exercise its discretion to lower the defendant's sentence from 84 months of incarceration to 67 months of incarceration pursuant to the amendment. Because the defendant will have completed the modified term of incarceration as of the March 3, 2008 effective date for the retroactive application of the November 1, 2007 amendments, the Court should simply amend the judgment to impose an incarceration term of time served.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY


    H. GORDON HALL
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. ct05153
    157 Church Street
    New Haven, Connecticut  06510
    (203) 821-3700
    Gordon.hall@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 3rd day of March, 2008, I caused a copy of the foregoing Notice to be sent by first-class mail, postage prepaid, to the following:

    John J. Quinn, Esq.
    248 Hudson Street
    Hartford, CT 06106; and

    United States Probation Officer Otto Rothi
    United States Probation Office
    450 Main Street
    Hartford, CT 06103

                                                     H. GORDON HALL
                                                     ASSISTANT UNITED STATES ATTORNEY